*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JILLIAN NEWMAN, as Personal Representative of
the ESTATE OF NICHOLAS NEWMAN,

       Plaintiff-Appellee,

and

LASAUNDRA HINES,

       Intervening Plaintiff,

v

DAVID WILLIAM GAVAL III,

       Defendant-Appellee,

and

ALICIA MARGARET GATES,

       Defendant,

and

MEMBERSELECT INSURANCE COMPANY,

       Defendant-Appellant.

UNPUBLISHED
March 19, 2025
11:39 AM

No. 368610
Wayne Circuit Court
LC No. 22-001769-NI

Before: YOUNG, P.J., and O'BRIEN and SWARTZLE, JJ.

SWARTZLE, J. (*concurring*).

       I concur in full with the majority's opinion. I write separately to point out that, in my opinion, the ground on which the majority's opinion stands is a slick one. Specifically, panels of this Court have recently concluded that the statutorily required minimum for bodily injury no-fault

-1-

coverage under MCL 500.3009(1) is $250,000 (per person) and $500,000 (per accident). See, e.g., *MemberSelect Ins Co v Partipilo*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 368674); *Progressive Marathon Ins Co v Espinoza-Solis*, __ Mich App __, __; __ NW3d __ (2024) (Docket No. 366764). But no one disputes that our Legislature has provided consumers with the choice to select lower amounts, namely, $50,000 (per person) and $100,000 (per accident). MCL 500.3009(5).

The fundamental error of these and related decisions is that they conflate the notion of a "statutorily created default" with that of a "statutorily required minimum." As a rough analogy, consider our criminal-sentencing regime, where we have statutory-mandatory minimums that exist alongside an advisory sentencing-guidelines regime. The sentencing court is required to calculate the appropriate sentencing-guideline range, which has both an advisory "maximum" and "minimum." The sentencing court can sentence within that range or can depart upward or downward, as the facts and circumstances suggest. But, when faced with a mandatory-minimum sentence set by statute, the sentencing court cannot depart downward below that floor, regardless of the calculated-guidelines range. Thus, the sentencing-guidelines range sets something like a default-minimum sentence (the bottom of the range), and the statutory-mandatory minimum sets the true, minimum sentence from which a sentence cannot deviate downward. Here, the $250,000/$500,000 "minimum" is akin to the bottom of the guidelines range, and the $50,000/$100,000 "minimum" is akin to the statutory mandatory-minimum sentence. As with any analogy, this is not a perfect one, so I will not press it beyond its usefulness.

The larger point is this: Clearly, with the default $250,000/$500,000 limits, our Legislature intended to "nudge" consumers into taking (and therefore paying for) these amounts. But, it must also be acknowledged that our Legislature has permitted consumer choice, and relevant here, that choice entails lower statutory limits, down to a floor of $50,000/$100,000. Thus, under the letter of the law, there is nothing *requiring* or *mandating* a consumer to take the higher statutory limits. Moreover, the mere checking of a box to evidence an affirmative selection can hardly be deemed so onerous as to make the *de joure* default into a *de facto* mandate. Properly read, the no-fault act set the statutorily *required*, *mandatory* minimum limits at $50,000/$100,000, not $250,000/$500,000.

As a final point, I recognize that MCL 500.3009(1) uses the term "must" when describing the limits in an insurance policy, and those limits are initially set at $250,000/$500,000. But, context matters in statutory interpretation, and a "must" can become a "may" under certain principles of grammar. Here, our "must" becomes, in effect, a "may," as the mandatory nature of "must" in MCL 500.3009(1) is immediately qualified by the phrase "Subject to subsections (5) and (8)," the precise provisions that set the *actual* mandatory minimum limits of $50,000/$100,000. A plain reading is one that reads "must" in its proper context; a contrary one, I suspect, slips up and reads too much into that term.

With all of this said, I recognize the binding nature of *Partipilo* and *Espinoza-Solis*, and therefore I concur in the majority's opinion.

/s/ Brock A. Swartzle